# Brown v. Turman.

(Decided May 19, 1936.)

MARTIN & SMITH for appellant.

HANNAH, VAN SANT & McKENZIE and S. S. WILLIS for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER —Affirming.

This case involves the office of superintendent of schools of Boyd county.

L. C. Caldwell had been superintendent for several years, and in January, 1935, was elected for another four-year term. Four of the five members of the county board of education favored him, and at the general November, 1935, election, two of those four, Bryan and Young, were candidates for re-election. Bowling and Scott opposed them. The issue seems to have been whether Caldwell should be continued in office. The last two named candidates were sponsored openly and vigorously by Allen H. Turman, who was expecting to be named as superintendent in place of Caldwell, against whom charges would be preferred. They won by substantial majorities.

The county board of education had never adopted rules or regulations to govern itself, but had adopted a resolution designating the first Wednesday in each month for its regular meeting. The board accordingly met on Wednesday, January 1, 1936, and transacted

its routine business. The minutes of that meeting have an entry:

"By agreement the Board recessed to meet Saturday, January 4, 1936, 2 p. m."

The correctness of that minute is attacked in this suit upon the ground that it was fraudulently entered after adjournment, and that there was in fact no recess taken. However, either just before or after adjournment (the evidence being in conflict), Caldwell, as secretary of the board, stated the board might have a meeting on Saturday, and there was an understanding by some, if not all, of the members, that such a meeting would likely be held. Certain it is that the matter was not definite. It was understood, as all agree, that Johnson, who seems to have lived farther in the country, was to call by telephone from Ashland to learn whether the board would meet. On Friday, Caldwell advised three of his supporters of a purpose to resign on Saturday in order that the old board might choose his successor. H. R. Brown and his brother called on Johnson at his home early Saturday morning, told him that Caldwell was going to resign, and solicited his support of Brown for the office of superintendent, but received no encouragement, as Johnson was committed to Turman. Reference was made to the proposed meeting that afternoon, and Johnson said he was not going. Hamilton, a member, reported to the board that Johnson said he would not be present. About 2 o'clock that afternoon Johnson had a friend, Hutchinson, telephone Caldwell. According to the evidence of Johnson, Hutchinson, and another, he called to inquire whether the meeting would be held. Hutchinson says Caldwell told him it would not. Caldwell says Hutchinson made no such inquiry, but merely asked if he knew where Johnson could be found. The members of the board, other than Johnson, were at the courthouse in Catlettsburg, and waited until about 3 o'clock, as they say, for Johnson to show up. A number of interested parties were gathered there, including advocates of Turman, to attend the session. Except when it had met on school grounds on two or three occasions, the board had always had its meetings in the office of the county superintendent. On this occasion, however, the four men and Caldwell got together for a moment in the office of the county at-

torney, and at Caldwell's suggestion they quickly agreed to go to a hotel in Ashland and meet there at 4 o'clock. As stated in the minutes, the purpose was "to seek a quieter atmosphere for the transaction of the Board's business in order that they may not be interrupted in their deliberations by the spectators, and to have a conference with H. R. Brown, whose home is in Ashland." Those attending say there was no purpose to get away from Johnson. Nevertheless, the meeting and adjournment were attended with absolute secrecy. The circumstances, with some testimony of deceptive statements by Caldwell and Young, form a substantial basis for believing that the board deliberately avoided any possible pursuit in their escape, which seems to have been from the public. These four members, with Caldwell and Brown, held a meeting in the private apartment of Caldwell's secretary on the seventh floor of the hotel. Here Caldwell tendered his resignation as superintendent. It was accepted, and Brown was elected in his place for the balance of the term. He then and there took the oath of office and executed bond.

On the morning of January 6th the two new members of the board qualified. They, with Johnson, proceeded to disprove the minutes showing a meeting of the board on the previous Saturday as being inaccurate. The resignation of Caldwell was accepted by them, and they elected Turman to fill the vacancy. The minutes show that Hamilton, another member of the board, came in late but did not participate in the voting on this matter.

This suit was brought by Brown against Turman to enjoin him from interfering with Brown in the discharge of his office and to have the court quiet his title thereto. His response was to claim the office for himself. The final judgment declared Turman to be the duly elected superintendent, and enjoined Brown from interfering with him in the discharge of his duties. Brown appeals.

It seems unnecessary to decide the character of the meeting held on Saturday, whether it was a recess or adjournment of the regular meeting held on Wednesday, or a special meeting. Nor need we decide whether the meeting in Ashland, which is a dis-

trict independent of the county board of education, and therefore beyond its geographical territory, was invalid on that account. Let it be conceded that Johnson had notice that a meeting was to be held Saturday afternoon, as the appellant contends. The time fixed, however, was 2 o'clock, and by every rule of implication the meeting was to be held at the regular place. As to special meetings, section 4399-29 of the Statutes (section 24, art. 5, chapter 65, Acts 1934) requires that each member of the board "shall have due and timely notice of such meetings and the nature, object and purpose for which called." Section 603, McQuillin on Municipal Corporations (2 Ed.), states the law to be:

"A legal notice to all of those composing or representing the corporate body of every meeting is requisite, since it is not only the duty but the right of each member to be present and participate in the deliberations and proceedings * * * The notice must be issued and served by the proper authority, giving the time and place of the meeting, unless held at the usual place. * * * Whenever the meeting is held at an unusual place, intimation of that circumstance must be contained in the notice, to prevent fraud or surprise."

In Town of Springfield v. People's Deposit Bank, 111 Ky. 105, 63 S. W. 271, 272, 23 Ky. Law Rep. 519, it is shown that the town trustees had failed to provide a regular place of meeting of the board. It had been in the habit of meeting at the law office of its attorney, but the members held a special meeting at the saloon of one of them and made a tax levy. The action was held invalid. In doing so the court said:

"Such loose methods as shown in this case, if tolerated, would practically leave the property of the citizens subject to seizure and appropriation at the will and upon the act of a mere caucus of a town council; that is, at a casual meeting of a majority of its members, at any place within the town, and at which their constituents would have no opportunity to be present, and by that potent influence, or legitimate representation, have their views and interests directly considered. It was to prevent such evils that the present statutes on this subject were enacted."

In Wells v. Town of. Mt. Olivet, 126 Ky. 131, 102 S. W. 1182, 1183, 31 Ry. Law Rep., 576, 11 L. R. A. (N. S.) 1080, one of the grounds of attack on a hitching ordinance was that it had been enacted at a time and place not provided by statute. It appears that the board of trustees had never adopted an ordinance fixing the time and place of its meetings as required by the statute. It was written that under those circumstances the members could assemble at some convenient and accessible place within the corporate limits of the town, and that the mere fact that no ordinance had established the place of meeting would not in itself "render invalid proceedings had in the usual way at a regular or called meeting, although a state of case might be presented that would warrant the court in holding that the legislation complained of was adopted at a place selected for the purpose of depriving the citizens of the town of the right to be present at meetings of the council." The opinion does not disclose whether the meeting was or was not held at the regular place, but the implication is that it was.

In Shugars v. Hamilton, 122 Ky. 606, 92 S. W. 564, 29 Ky. Law Rep. 127, it was held that, when a council has designated a meeting place, a meeting held elsewhere, unless some cogent reason could be shown why it was not held at the regular place, is not authorized under the statute, and no power exists for the enactment of ordinances there.

We think the consistent course of action of the Boyd county board of education in meeting in the office of the county school superintendent established a regular meeting place as effectually as if it had been done by formal action. Cf. Schultz v. Ohio County, 226 Ky. 633, 11 S. W. (2d) 702. Mr. Johnson had received no notice of a meeting of the board of education to be held in the county attorney's office at 3 o'clock or at the hotel in Ashland at 4 o'clock. When the members of the board met behind closed doors at those places, where no meeting had ever been held, they were not holding any adjourned meeting, indefinitely agreed upon and recited in the minutes of the regular meeting held on January 1st, nor a called meeting of which Johnson had actual notice.

Counsel for appellant concede that, in the absence

of legal notice to all members of a special meeting of the board, its action is invalid when any of them are absent, for the board can only bind the district by a corporate meeting held as provided by law. Section 4399-29, Kentucky Statutes (Supp. 1934); section 603, McQuillin on Municipal Corporations (2d Ed.); Saunders v. O'Bannon, 87 S. W. 1105, 27 Ky. Law Rep. 1166; Cooke v. White Common School District No. 7, 111 S. W. 686, 33 Ky. Law Rep. 926; Shugars v. Hamilton, supra; Meacham Contracting Co. v. Kleiderer, 146 Ky. 441, 142 S. W. 720.

The judgment is therefore affirmed.