Hamm, J.
This is a proceeding pursuant to article 78 of the Civil Practice Act to review the determination of the Commissioner of Education in dismissing an appeal.
The issue is the right to office of a member of the school hoard of a union free school district in Nassau County.
A special meeting was called by the school board for June 25, 1955, for the purpose of electing two additional members. No candidate received a majority of the votes cast. The candidates who received a plurality of the votes cast were seated as members of the board. Because of the failure of these candidates to receive a majority as required by law the commissioner’s decision on appeal holding that they were duly elected was annulled (Matter of Eaton v. Allen, 1 Misc 2d 496). The invalidity of their election was raised on the appeal to the commissioner which is being reviewed herein.
On July 30,1955, by a vote of four to two the board appointed a seventh member to fill a vacancy. The four votes in favor of the seventh member included the two members of the board whose status as plurality electees was the subject of the proceeding in Matter of Eaton v. Allen (supra).
A de facto body cannot create a de jure officer (Matter of Ringler & Co., 204 N. Y. 30, 41-48). This was a case dealing *8 with the appointment of officers of private corporations. However, the principle is the same as to public officers. And it was there held that, while trustees of a stock corporation who are improperly elected might be de facto officers as to the public and their acts might be binding on the corporation and stockholders so far as the public was concerned, they could not elect other trustees to be officers de jure.
Matter of Ringler & Co. (supra) was relied on and quoted from at length by the New Jersey Court of Errors and Appeals in von Nieda v. Bennett (117 N. J. L. 231) wherein it was decided that a de facto majority of an administrative public body may not confer tenure of office. The facts are so similar to those of the instant case that they are quoted at length as they appear in the opinion (117 N. J. L. 231, 236): “ The determinative question presented in all these cases, which were consolidated into one cause, is whether a de facto body can create a de jure officer.
‘ ‘ The facts which give rise to this question are not in serious dispute and are substantially as follows: Camden, a second class city, operating under commission form of government, held its quadrennial election of five commissioners on May 14th, 1935. The returns of the election received that night and early the next morning indicated the election of von Nieda and Bennett, of one faction, and Brunner and Kobus, of the other faction, as commissioners. As to them there is no dispute. The tabulated votes indicated, and it was so announced, that there was a tie vote between Leonard and Hartmann, each of opposing factions for the fifth commissioner. The city clerk after canvassing the votes reported that Leonard was elected over Hartmann by a majority of three votes, and issued his certificate of election certifying that Bennett, von Nieda, Brunner, Kobus and Leonard had been elected city commissioners. Action was promptly taken by Hartmann for a recount of the votes cast, disputing Leonard’s right to the office. While this dispute was pending Leonard was, on May 21st, 1935, over the protests of Brunner and Kobus, sworn in as a city commissioner. On this day the commissioners, with Leonard as a member, proceeded with the organization meeting. A resolution was introduced designating von Nieda as mayor. Before vote was taken thereon Kobus and Brunner registered protest against the making of permanent designations or appointments giving as their reason that such action should await the outcome of the dispute between Leonard and Hartmann. Despite these objections, the commissioners, by a vote of three to two, Leonard voting with the majority, designated von Nieda as mayor and six of the respondents herein *9 to various offices (city counsel, first assistant city counsel, second assistant city counsel, police court judge, city prosecutor, overseer of the poor and deputy city clerk). On May 28th, 1935, by a like vote the said commissioners appointed the respondents Braun and Borz as city clerk and deputy city clerk.
“ Following the initial meeting of the commissioners the recount of the disputed election between Hartmann and Leonard determined that the former received a majority of seven votes over the latter. Accordingly Leonard’s certificate was revoked and Hartmann received a certificate of his election on or about August 1st, 1935. On August 1st, 1935, Hartmann was sworn in as a commissioner, and a reorganization of the commission ensued. By a majority vote (three to two) of the commissioners Brunner was designated as mayor. Further resolutions were adopted having for their purpose the reallocation of various functions and bureaus in the city government among the several departments. Protest was made by the minority faction to the action.
“ On September 16th, 1935, the majority commissioners, Brunner, Kobus and Hartmann, passed resolutions over the protests of von Hieda and Bennett dismissing the respondents herein from the offices to which they were appointed on May 21st, 1935, and appointing the appellants herein in their stead. Respondents sued out writs of certiorari to review the action of the commissioners aforesaid. The Supreme Court ordered the resolutions set aside. Hence this appeal.”
The court also said (117 N. J. L. 231, 236, supra): “ In the case of In re George Ringler & Co., 204 N. Y. 30, 44; 97 N. E. Rep. 593 (1912), the Court of Appeals of New York, after reviewing the Brinkerhoff case and other cases and authors on the subject, said:
“ ‘ We have examined them sufficiently to ascertain that they are all apparently planted upon the accepted doctrine that, as to the public and third persons dealing with public or corporate officers or their appointees, the acts of such officers or appointees are valid. In such cases it matters little whether the officer is such de facto or de jure, for in either event the law recognizes his acts as binding. But if it is true, as suggested by Judge Dillon, that the office, and not the officer, is the appointing power, it would logically follow that whenever the office lawfully exists all appointments and elections made by any incumbent, no matter how invalid his title, would be de jure appointments or elections. It seems to us that this is carrying the de facto doctrine beyond the reason upon which it rests. It is certainly more logical to hold that, in cases where public *10 convenience or the rights of innocent third persons require that the acts of those who are permitted to serve as public officers must be held valid, the de facto doctrine will be applied, and that in all other cases where the question arises in a direct proceeding it will be decided according to the fact. ’ ’’
The commissioner’s dismissal of the appeal must be annulled.
The status of the board as a de facto board and the validity of its acts as to the public and third persons is not in issue in this proceeding. As a matter of fact the petitioner’s counsel has advised: “ There is no desire or attempt being made, or intended to be made to question the acts of the board relative to contracts.”
The petitioner asks for direction that a special school election be held or that the commissioner be ordered to direct such election. As there are alternative methods for filling vacancies (Education Law, § 1709, subd. 17; § 2113, subds. 1, 2), the order will not contain such direction. It is assumed that the interested parties will proceed in accordance with law.
Submit order on three days’ notice.